UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                                                        :
PATRICIA CATANIA and SCOTT                              :
MURPHY,                                                 :
                                                        :
                              Plaintiffs,               :
                                                        :
              -v-                                       :
                                                        :
UNITED FEDERATION OF TEACHERS,                          :
*et al.*,                                               :
                                                        :
                              Defendants.               :
                                                        :
--------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 2/8/2024 |

1:21-cv-1257-GHW

<u>MEMORANDUM OPINION &
ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Patricia Catania was the principal of Middle School 224, a public school in New York City.

Ms. Catania is white.  She claims that the defendants in this case—a labor union and its officers—

conspired with a group of the school's teachers to replace Ms. Catania with a Black principal.  To

implement this conspiracy, the defendants created the "false narrative" that Ms. Catania wanted to

prevent teachers at the school from teaching Black history.  The conspirators publicized that

narrative, provoking a wave of negative publicity and harassment that ultimately forced Ms. Catania

to quit.

Ms. Catania claims that the defendants' conduct violated her rights under the First and

Fourteenth Amendments to the United States Constitution.  The defendants filed a motion to

dismiss her claims.  The defendants asserted that her claims could not proceed for a number of

reasons—most importantly because the union and its officers were not "state actors," and because

Ms. Catania did not adequately plead a violation of her constitutional rights.

Magistrate Judge Jennifer Willis reviewed the defendants' motion and recommended that the Court dismiss this action. Dkt. No. 107 (the "R&R"). The plaintiffs filed objections to the R&R, which this opinion now resolves. While the Court believes that some of the plaintiffs' critiques of the R&R have merit, they have no impact on the ultimate resolution of the motion to dismiss. Because the plaintiffs have not adequately pleaded that Ms. Catania's constitutional rights have been violated, her claims must be dismissed.

## II.      BACKGROUND

### A.  Parties

Plaintiff Patricia Catania began her work at Middle School 224 ("MS 224"), a New York City public school, in December 2016 as the school's acting principal. Dkt. No. 52 (the "Complaint") ¶ 75.[1] She was promoted to become the school's principal in October 2017. *Id.* ¶ 76. She served in that role until her resignation in June 2019. *Id.* ¶ 277. Ms. Catania is married to Plaintiff Scott Murphy. *Id.* ¶ 2. Defendants are the United Federation of Teachers (the "UFT") and four of its representatives, William Woodruff, Paul Egan, Janella Hinds, and Abdul Aqeel Williams. *Id.* ¶¶ 1, 39.

Mercedes Liriano, Jacinth Scott, Jasmine Dickson, Diane Roberts, and Chantale Josephs (the "MS 224 Teachers") all taught at MS 224 during Ms. Catania's tenure. Although Plaintiffs claim that the MS 224 Teachers conspired with Defendants and acted under color of state law to violate her rights, the teachers are not parties to this action. That is because in June 2019, Ms. Catania reached a state court settlement that released her claims against the Department of Education (the "DOE") and its employees, including the MS 224 Teachers. *See* 1:19-cv-11245, Dkt. No. 99-2.[2]

---

[1] All facts alleged in the Complaint are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Because Ms. Catania voluntarily resolved her claims against the teachers and the DOE—the people who are most likely to be state actors—she must strain to characterize the union as a state actor in order to pursue her claims in this case.

### B.  Union Employees Hold Meetings at MS 224

In January 2017, Defendant William Woodruff held a union meeting at MS 224.  *Id.* ¶ 94.

Mr. Woodruff is a district representative of the UFT who "frequently boasted and bragged that he

went after and 'took out' administrators."  *Id.* ¶ 304.  Dozens of MS 224 employees attended the

meeting, including MS 224 Teachers Mercedes Liriano, Jacinth Scott, and Jasmine Dickson.  *Id.* ¶ 95.

During the meeting, Mr. Woodruff said that "[w]e can Malcolm X her, by any means necessary we

will get her out.  Change through violence."  *Id.* ¶ 96.  He instructed the employees that if they filed

union grievances against Ms. Catania, "we can get her out."  *Id.*

The following year, Mr. Woodruff held another union meeting.  *Id.* ¶ 97.  Many of the same

employees attended.  *Id.* ¶¶ 98.  Mr. Woodruff instructed them to "grieve even the tiniest thing" to

get Catania removed from her position.  *Id.* ¶¶ 99.  He also directed the employees to tell reporters

the "false narrative" that Ms. Catania would not allow MS 224 teachers to teach Black history.  *Id.*

¶ 121.  During the meeting, Defendant Aqeel Williams, another union representative, said that

"[a]fter meeting with Principal Catania she [would] not want to meet with me again, after I [give] her

a one-two punch in the face."  *Id.* ¶ 116.

After the first meeting, Mercedes Liriano, one of the MS 224 Teachers who attended both

meetings, "frequently" told colleagues that "with respect to her priorities, [her] allegiance [was] to

the UFT first and foremost, and that she put[] the interests of the UFT before that of the

schoolchildren at MS 224."  *Id.* ¶ 64.

### C.  Teachers Complain to the Department of Education and Circulate a Petition to Fire Ms. Catania

Throughout Ms. Catania's tenure at MS 224, teachers lodged complaints about her through a

variety of channels.  Shortly after Ms. Catania became acting principal, teachers began to file

complaints with DOE's Office of Equal Opportunity.  *Id.* ¶ 240.  The complaints accused Ms.

Catania of discriminating against teachers on the basis of race or disability.  *Id.* ¶ 241.  According to

Plaintiffs, all of the DOE complaints were "false and unsubstantiated" and were ultimately "formally and expressly determined to be unfounded" by the DOE. *Id.* ¶¶ 240, 242.

"[I]n lockstep with Woodruff's exhortation," teachers also continuously filed grievances against Ms. Catania with the UFT. *Id.* ¶ 246. According to Plaintiffs, "none of [those grievances] had merit [and] none of [them] were substantiated." *Id.*

In March 2018, Ms. Liriano circulated a petition to all MS 224 teachers. *Id.* ¶ 218. The stated purpose of the petition was to "[g]et Catania the racist Principal removed." *Id.* That fall, MS 224 Teacher Diane Roberts sent a letter to DOE Superintendent Rafael Alvarez "falsely accusing Plaintiff therein of racist and discriminatory behavior towards her and some of the teachers at MS 224." *Id.* ¶ 247. Some teachers also called 311 to complain about Ms. Catania. *Id.* ¶ 243.

### D.  Teachers Make Disparaging Comments About Ms. Catania at School

Following the union meetings, several MS 224 Teachers made disparaging statements about Ms. Catania to their students. Throughout one school day in February 2018, Jasmine Dickson told her students in multiple classes that "Catania is a racist and I don't like what she did - telling Ms. Liriano not to teach black history month" and "[s]ome of the kids are saying that she said [B]lack people are crazy." *Id.* ¶ 238. That same month, Ms. Liriano told a group of students and a teacher in the school hallway that "Catania is a racist." *Id.* ¶¶ 216–217. Shortly thereafter, Jacinth Scott told a group of students and other teachers that Ms. Catania was a racist and "kicked me out of my room." *Id.* ¶ 237. Some students also insulted Ms. Catania. During an "official observation" conducted by a DOE deputy superintendent, a student called Ms. Catania a "racist, white b**ch." *Id.* ¶ 269. The comments continued into the following year. In April 2019, Ms. Liriano "caused forty (40) students at the school to opt out of a certain exam . . . so that it would reflect badly on Catania." *Id.* ¶ 270.

4

Ms. Liriano also denigrated Ms. Catania to her colleagues.  In the school main office in March 2018, Ms. Liriano told a coworker that "[Catania] could be a member of the KKK" and that "[Murphy] could be a member of the Klan."  *Id.* ¶ 220.  Several months later, Ms. Liriano sent an "email and/or text message" to school staff that read as follows:  "[t]oday was MS 224 graduation and yet again Principal Catania was up to her racist antics.  Catania's continual bias rhetoric has had a profound impact on so many.  Yet she continues to be a horrible leader at MS 224."  *Id.* ¶ 222.  And shortly after Ms. Catania became acting principal, Ms. Liriano said, in the presence of the DOE District Superintendent, "[d]on't worry, I'll get a [B]lack principal in here."  *Id.* ¶¶ 144–145.

### E.  Teachers Speak to the Media

Days before the second union meeting, the UFT arranged a press conference about Ms. Catania.  *Id.* ¶ 146.  School parents, school employees, and multiple media organizations attended.  *Id.* ¶ 147.  At the press conference, Ms. Liriano made several "false statements" about Ms. Catania to reporters.  *Id.* ¶ 149.  She said that Ms. Catania was racist, that Ms. Catania did not allow teachers to teach Black history, and that Ms. Catania had said "that [B]lack teachers have poor knowledge of their subjects and are only good at controlling classrooms."  *Id.*  Ms. Scott also spoke at the conference.  She called Ms. Catania a racist and asserted that Ms. Catania "doesn't belong in the school."  *Id.* ¶ 226.  Several days later, the New York Daily News published a front-page article about Ms. Catania, entitled "READING, WRITING & RACISM."  *Id.* ¶¶ 152–53.  The article featured quotes from Ms. Liriano and Ms. Scott accusing Ms. Catania of racism.  *Id.* ¶¶ 152–53, 230.

In the following weeks, Ms. Liriano made more statements to the media in front of the school.  ¶¶ 190–209.  Those statements were aired on television, posted online, and quoted in news articles.  *Id.*  Ms. Liriano accused Ms. Catania of instructing Ms. Liriano not to teach her students Black history.  *Id.* ¶ 190.  She also said that Ms. Catania had confiscated students' work on Black history and had hidden it in her office, that she had harassed students and teachers, and that she had

made disparaging comments about Black people and their effectiveness as teachers.  *Id.* ¶¶ 196, 203, 209.

###    F.  Union Holds Protests Outside of the School

The same month, Mr. Woodruff organized two protests outside of the school.  *Id.* ¶ 102. The protests featured "public speeches to the crowd and public comments to the media, which speeches and comments all cast Catania in a false and negative light, including the false and negative light of being a racist."  *Id.*  Other "participants in, and organizers of" the protests included Ms. Liriano and Ms. Scott, other teachers from the school, students, parents, community members, and local news reporters.  *Id.* ¶¶ 103, 105.

Mr. Woodruff contacted members of the media to cover the protests.  *Id.* ¶ 107.  The subsequent media coverage "amplified and parroted the false narrative that Catania was a racist."  *Id.* ¶¶ 107–09, 112.  At one protest, Defendants and Ms. Liriano organized a photograph featuring Ms. Liriano and four MS 224 students.  *Id.* ¶ 113.  In the photograph, the students held signs bearing slogans associated with the Black Lives Matter movement and expressing the importance of teaching Black history.  *Id.* ¶¶ 159–62.  The photo appeared in the front-page article in the New York Daily News about Ms. Catania.  *Id.* ¶ 159.

Protesters shouted death threats and insults at Ms. Catania, including "white racist b**ch" and "white devil."  *Id.* ¶ 113.  Ms. Catania "needed to be escorted to and from work for at least four (4) weeks" following the first protest.  *Id.* ¶ 115.  During the second protest, a news reporter "urged the protesters and students to physically and dangerously pursue Catania in a threatening manner for the benefit of the news cameras."  *Id.* ¶ 111.  Police officers and DOE security officers restrained the protestors and closed the street so that Ms. Catania could safely reach her car.  *Id.* ¶¶ 111, 114.

### G.  Union Employees Demonstrate Outside of Ms. Catania's Office

On two occasions in June 2018, groups of UFT employees, including Defendants, gathered

outside of Ms. Catania's office "in a loud, disruptive, and threatening manner."  *Id.* ¶¶ 123, 130.

Defendant Egan stated that "[w]e are here to intimidate her [meaning Catania] like she is

intimidating our members."  *Id.* ¶ 123.  He also said to Ms. Catania that "I can make or break your

career.  I know you're not racist, but with newspapers it's all about perception and it's all about the

spin I put on it."  *Id.*

### H.  Ms. Catania Resigns

In December 2018, Superintendent Alvarez "questioned [Catania] as to whether she could

continue to lead, or effectively lead, the school" given the protests and negative media attention.  *Id.*

¶ 272.  In the spring of the following year, Superintendent Alvarez told Ms. Catania's union

representative that "as result of the controversy caused by the Daily News articles, and the

protests . . . at the school, and the media coverage with respect thereto, Catania was 'radioactive',

and was thus going to be removed as Principal."  *Id.* ¶ 271.  According to the Complaint,

Superintendent Alvarez began adding to Ms. Catania's personnel file "trivial, technical and/or

outright false violations" as a "pretext[]" to remove her from her position.  *Id.* ¶ 274.  However,

Plaintiffs claim that "[t]he actual reason the DOE intended to remove Catania as school Principal

was not based on the pre-textual violations, but because that they had no choice but to remove her

based on the false and dangerous narrative" Defendants and the MS 224 Teachers had promulgated

about Ms. Catania.  *Id.* ¶ 275.

A few months later, Ms. Catania resigned from her job as principal of the school.  *Id.* ¶ 277.

Ms. Catania believed that if she did not resign, she would face discipline, including possible removal

as principal and reassignment as an assistant principal in the same district, based on the allegedly

pretextual violations that Superintendent Alvarez had added to her personnel file.  *Id.* ¶ 276.  She

also resigned to escape Defendants' "wrongful campaign of terror and harassment against her in conspiracy with others." *Id.*

## I. Procedural History

Plaintiffs filed this action on February 11, 2021, under 42 U.S.C. §§ 1983 and 1985, claiming that Defendants had conspired with the MS 224 Teachers to harass Ms. Catania and to cause her removal from her position. *Id.* ¶ 9. Plaintiffs claim that the conspiracy resulted in violations of Ms. Catania's rights under the First Amendment, her due process rights under the Fourteenth Amendment, and her equal protection rights under the Fourteenth Amendment. *Id.* ¶¶ 311, 321–322, 340, 353. They also bring derivative claims on behalf of Mr. Murphy. *Id.* ¶ 340.

Defendants filed a motion to dismiss, asserting, among other things, that Plaintiffs failed to state a claim under either § 1983 or § 1985. Dkt. No. 69 ("Motion to Dismiss"). Defendants argued that Plaintiffs failed to adequately plead that Ms. Catania suffered any deprivation of her due process rights under the Fourteenth Amendment or her rights under the First Amendment. *See id.* at 15–16. While this deficiency alone would defeat Plaintiffs' claims, Defendants also argued that Plaintiff failed to adequately plead that Defendants conspired with the DOE or any state employee, or that any of the harmful acts alleged were attributable to the state, as required to adequately plead a violation of either §§ 1983 or 1985. *See id.* at 13–14, 16–19. Plaintiffs filed an opposition. Dkt. No. 71. Defendants filed a reply. Dkt. No. 74 ("Reply"). Both parties then filed supplemental briefing. Dkt. Nos. 105 ("Defs' Supp. Br.") and 106.

Judge Willis subsequently issued an R&R resolving the many issues raised in Defendants' motion. She recommended dismissal of Plaintiffs' §§ 1983 and 1985 claims because the Complaint did not adequately plead that Ms. Catania was deprived of her due process rights under the Fourteenth Amendment or her rights under the First Amendment. *See* R&R at 9–11. Judge Willis also concluded that these claims failed on the additional grounds that Plaintiffs did not adequately

plead that Defendants conspired with the DOE or that the MS 224 Teachers' actions were attributable to the state. *See id.* at 6–9. Plaintiffs filed timely objections on May 10, 2023. Dkt. No. 108 ("Plaintiffs' Objections"). Defendants responded on May 22, 2023. Dkt. No. 113. Plaintiffs then filed a reply. Dkt. No. 116.

### III.   LEGAL STANDARD

#### A.   Report and Recommendation Standard of Review

A district court reviewing a magistrate judge's report and recommendation on a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). When a party timely objects to a magistrate's report and recommendation, a district court reviews, *de novo*, "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

#### B.   Rule 12(b)(6)

Under F.R.C.P. Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable LLC*, 622

F.3d 104, 110–11 (2d Cir. 2010).  To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice.  *Id.*  To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement."  Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79).  Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  A court may also consider "documents attached to the complaint as exhibits, . . . documents incorporated by reference in the complaint . . . [and] document[s] integral to the complaint."  *DiFolco*, 622 F.3d at 111 (internal quotation marks and

citation omitted).  In the Rule 12(b)(6) context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

## IV.   DISCUSSION

Judge Willis made several recommendations to which neither party offered specific objections:[3]  (1) that the action was timely, (2) that the action was not precluded a previous state court action, (3) that Defendants could be sued in their individual capacities, (4) that Plaintiff Murphy's derivative claims were not cognizable under either § 1985 or § 1983,[4] and (5) that it was inappropriate at the motion to dismiss stage to determine whether attorneys' fees should be awarded.  Because neither party raised specific objections to Judge Willis's analysis of any of these issues, the Court reviews these portions of the R&R for clear error.  It finds none.  Therefore, the Court adopts these portions of the R&R, and Plaintiff Murphy's derivative claims are dismissed.

Plaintiffs did offer specific objections to the following conclusions in the R&R:  (1) that the Complaint failed to adequately plead a conspiracy between Defendants and state actors, (2) that the MS 224 Teachers were not state actors, (3) that the availability of an Article 78 hearing defeats Ms.

---

[3] In their objections, Plaintiffs assert that "[g]enerally, Plaintiffs object to each and every part of the R&R which is adverse to them, and which support the Magistrate's recommendation of dismissal."  Plaintiffs' Objections at 4.  Because this objection is not "clearly aimed at particular findings in the magistrate judge's proposal," it does not justify *de novo* review. *McDonaugh*, 672 F. Supp. 2d at 547.

[4] In their objections, Plaintiffs argue, "[t]he Magistrate contends that Murphy's derivative claims stand and fall with Catania's claims.  Here, because Plaintiff's claims are valid, for the reasons stated above, so too are those of Murphy." Plaintiffs' Objections at 15.  Because this argument does not address the grounds on which Judge Willis recommended dismissal of the derivative claims—namely, that they are not cognizable under either § 1983 or § 1985—this objection does not require the Court to review this portion of the R&R *de novo*.

11

Catania's due process claims under the Fourteenth Amendment, and (4) that Plaintiffs failed to adequately plead a violation of Ms. Catania's rights under the First Amendment.  Therefore, the Court reviews *de novo* whether Plaintiffs have adequately pleaded First Amendment claims and Fourteenth Amendment due process claims under §§ 1983 and 1985.

### A.  Section 1983 Claims

Because Plaintiffs have failed to state a § 1983 claim for violation of Ms. Catania's rights under the First Amendment or her due process rights under the Fourteenth Amendment, these claims are dismissed.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To constitute action under color of state law, "the deprivation must be caused by the exercise of some right or privilege created by the State," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Id.* at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982)).

Because Defendants are nominally private parties, Plaintiff must adequately plead that their actions are properly attributed to the state.[5]

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).  A plaintiff may adequately plead such "joint action"

---

[5] Defendants argue, and Plaintiffs do not dispute, that union representatives generally are not state actors subject to § 1983 liability.  *See, e.g.*, *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("Labor unions . . . generally are not state actors." (citation omitted))

by pleading the existence of a § 1983 conspiracy, by alleging "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) ("To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. Put differently, a private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." (internal citations and quotations omitted)).

The Court agrees with the R&R's conclusion that Ms. Catania did not suffer a violation of her due process rights under the Fourteenth Amendment or her rights under the First Amendment and that these claims under § 1983 should be dismissed. Therefore, an analysis of whether Plaintiffs have adequately pleaded the existence of a § 1983 conspiracy or have adequately pleaded that any violation of Ms. Catania's rights was caused by a "person acting under color of state law" does not impact the Court's ultimate determination. *West*, 487 U.S. at 48. However, the Court disagrees with the R&R's analysis of both the conspiracy and the state action components of Plaintiffs' claims. Therefore, the Court sustains Plaintiffs' objections to these portions of the R&R.

### i.      Violation of a Constitutional Right

The Court holds that Plaintiffs have failed to adequately plead that Ms. Catania suffered a violation of either her due process rights under the Fourteenth Amendment or her rights under the First Amendment. The Court will address these two claims in turn.

### 1. Fourteenth Amendment Due Process

The Complaint raises two separate due process claims under the Fourteenth Amendment: deprivation of Ms. Catania's property interest in her job as principal without due process and a "stigma-plus" claim. Both claims fail.

### a) Deprivation of Property Without Due Process

"A procedural due process claim is composed of two elements:  (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).  The property or liberty interest must be a "constitutionally protected interest." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002).  "In order to have an interest protectable under the Constitution, a person must have 'legitimate claim of entitlement to it.'" *Id.* (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)).  "Employees at will have no protectable property interest in their continued employment." *Id.*  "[A] person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent sufficient cause for discharge or he can prove a de facto system of tenure." *Id.* (quotations omitted).

Because Plaintiffs did not adequately plead that Ms. Catania had a constitutionally protected property interest in her role as principal of MS 224, they failed to state a due process claim.  The Complaint is bereft of any allegation that Ms. Catania had tenure or a contract guaranteeing her continued employment.[6]  Nor do Plaintiffs point to any applicable statute guaranteeing her employment.[7]  "To survive a motion to dismiss, a due process claim under section 1983 must allege the deprivation of a constitutionally protected interest." *Abramson*, 278 F.3d at 99; *see also Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017) (summary order) ("In the absence of a

---

[6] As an exhibit to Plaintiffs' opposition to the Motion to Dismiss, Ms. Catania asserts for the first time, in an affidavit, that her employment was guaranteed by a collective bargaining agreement.  Dkt. No. 53-2.  The Court disregards this affidavit because "[t]he submission of such affidavits in opposition to a motion to dismiss is improper as 'courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss.'" *Regan v. Vill. of Pelham*, No. 19 CIV. 7987 (NSR), 2021 WL 1063320, at *1 (S.D.N.Y. Mar. 19, 2021) (quoting *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018)).

[7] Defendants assert that as a probationary principal, Ms. Catania did not have a protectable property interest.  Defendants do not cite to any authority supporting this assertion, but the Court understands that Defendants are referring to N.Y. Civ. Serv. L. Educ. § 2573.  Under this statute, newly appointed principals must serve a four-year probationary period before becoming entitled to tenure.  Plaintiffs allege that Ms. Catania resigned from the principal position less than three years after her appointment to acting principal, therefore the Complaint does not raise a plausible inference that Ms. Catania had tenure at the time of her resignation.

protected property interest, a procedural due process claim must fail.").  Accordingly, because Plaintiffs did not adequately plead that Ms. Catania had "legitimate claim of entitlement" to her continued employment, this claim fails, even assuming that Plaintiffs have adequately pleaded that Ms. Catania's resignation was a constructive termination or demotion.[8]  *Abramson*, 278 F.3d at 99. The Court need not analyze whether Plaintiffs have adequately pleaded the second element, lack of due process.

### b)  Stigma-Plus Claim

Though a probationary employee has no constitutionally protected interest in her employment, "a probationary employee can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.'"  *Segal v. City of New York,* 459 F.3d 207, 212 (2d Cir. 2006) (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)).  "Such an action is referred to as a stigma-plus claim; it involves an 'injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'"  *Id.* (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)).

To adequately plead the "stigma" component of a stigma-plus claim based on termination from public employment a plaintiff must plead three elements:

> *First*, the plaintiff must . . . show that the government made stigmatizing statements about [her]—statements that call into question [the] plaintiff's good name, reputation, honor, or integrity. . . .  *Second*, a plaintiff must prove these stigmatizing statements were made public.  *Third*, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment.

---

[8] Defendants do not argue that Plaintiffs have failed to adequately plead that Ms. Catania was constructively terminated or demoted.  Instead, they attack the veracity of the allegations in the Complaint.  Defendants argue that Ms. Catania's claim of constructive termination or demotion is "unavailing" and ask, "[w]hy didn't Catania apply for a principal position in another school, or why didn't the DOE transfer her to one of over 1,600 schools if there was no problem with her performance?"  Reply at 8.  The Court does not resolve disputed facts at the motion to dismiss stage, so it does not address this argument.  *See DiFolco*, 622 F.3d at 110–111 (courts must accept factual allegations in the complaint as true when ruling on a motion to dismiss).

Case 1:21-cv-01257-GHW-JW   Document 117   Filed 02/08/24   Page 16 of 26

*Id.* (internal citations and quotations omitted) (emphasis in the original).  "[I]n order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that her liberty was deprived without due process of law."  *Id.* at 213.  "Stated differently, the availability of adequate process defeats a stigma-plus claim."  *Id.*

Even assuming that Plaintiffs adequately pleaded both the "stigma" and "plus" components of a stigma-plus claim,[9] Plaintiffs failed to adequately plead a stigma-plus claim because they did not allege that Ms. Catania was denied adequate process.  For an at-will government employee like Ms. Catania, "a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests."  *Id.* at 218.  In New York, an individual can obtain a name-clearing hearing under N.Y. C.P.L.R. § 7801 (an "Article 78 hearing") if she shows she has been deprived of a liberty interest.  *See Swinton v. Safir*, 93 N.Y.2d 758, 764 (1999) (explaining that the stigma and plus components of a stigma-plus claims constitute a deprivation of a liberty interest that entitles an individual to a name-clearing hearing).  The availability of this hearing—regardless of whether the plaintiff chose to seek it—"provides the requisite post-deprivation process . . . ."  *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) (holding that availability of an Article 78 hearing is sufficient to defeat a stigma-plus claim).  Because Plaintiffs do not allege that Ms. Catania was denied an Article 78 hearing—or even that she sought one—Ms. Catania's stigma-plus claim fails.

Plaintiffs argue in Plaintiffs' Objections that because they are "seeking damages only, and not equitable relief, Article 78 is not available as a post-termination (or demotion) remedy, and the unavailability of such relief renders Plaintiff's Fourteenth Amendment claim viable."  Plaintiffs' Objections at 14.  But "[a]n Article 78 proceeding is adequate for due process purposes even though

---

[9] Defendants do not argue that Plaintiffs failed to adequately plead either of these elements.

16

the petitioner may not be able to recover the same relief that [s]he could in a § 1983 suit." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996). Indeed, "there *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure" available. *Id.* at 882 (emphasis in original).

For this reason, the two cases Plaintiffs cite in support of their argument are inapposite. In both *Keles v. Manhattan College Corp.*, No. 88 Civ. 8080, 1993 WL 331582 (S.D.N.Y. Aug. 20, 1993) *aff'd*, 29 F.3d 622 (2d Cir. 1994) and *Gally v. Columbia University*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998), the plaintiffs alleged that they had suffered injuries not from deprivation of due process, but from breach of contract. And in both cases, the court held that an Article 78 proceeding could not provide an adequate remedy for a breach of contract. In contrast, the availability of an Article 78 hearing here means that Ms. Catania has not adequately pleaded that she suffered an injury and therefore has not adequately pleaded that she is entitled to a remedy, at least with respect to this claim. *See Mullahey v. Zurlo,* No. 116CV00401MADDJS, 2017 WL 530523, at *5 (N.D.N.Y. Feb. 9, 2017) ("[C]ourts in the Second Circuit have repeatedly found that Article 78 name-clearing hearings are all the process due" to public employees who plead a stigma-plus claim based on an alleged constructive termination) (collecting cases). Therefore, the availability of an Article 78 hearing defeats Ms. Catania's stigma-plus claim.

### 2. First Amendment

Ms. Catania's First Amendment claim is similarly without merit. Plaintiffs claim violations of Ms. Catania's First Amendment right to "not sustain damage to her professional and personal reputation" and to "maintain[] a good, honorable and positive reputation." Complaint ¶¶ 266, 311. Plaintiffs also allege that Defendants "wanted [Ms. Catania] removed" from her job as principal because she took unspecified "measures . . . to improve the performance of the school." *Id.* ¶ 338.

As an initial matter, the First Amendment protects an individual's right to freedom of speech and expression.  *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006).  It does not protect an individual's right to "not sustain damage to her professional and personal reputation" or to "maintain[] a good, honorable and positive reputation," and Plaintiffs cite no authority in support of these claims.  Complaint ¶¶ 266, 311.  *See, e.g.*, *Fowler v. Am. Lawyer Media, Inc.*, 46 F. App'x 54, 54 (2d Cir. 2002) (summary order) ("Speech . . . cannot violate the First Amendment rights of another individual.  Rather, the relevance of the First Amendment to a defamation action is that the First Amendment protects certain defamatory speech and thus may provide a defendant with a defense to liability.").

Plaintiffs' allegations regarding Defendants' motivation to remove Ms. Catania from her job raise a First Amendment retaliation claim.  To state a claim for First Amendment retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected from the particular retaliatory act alleged; (2) that the retaliatory act qualifies as an adverse action [taken] against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action."  *Heim v. Daniel*, 81 F.4th 212, 221 (2d Cir. 2023) (quotations omitted).  To determine whether a public employee's speech is protected, courts examine "(1) whether the employee spoke as a citizen on a matter of public concern and (2) if so, whether the employer had an adequate justification for treating the employee differently based on his or her speech from any other member of the general public."  *Id.* at 228 (quotations and citations omitted).  This inquiry turns on "the content, form, and context of a given statement, as revealed by the whole record . . . ."  *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 148 (1983)).

18

The Complaint does not state a claim for First Amendment retaliation because it does not allege that Ms. Catania spoke or expressed herself on matters of public concern.[10]  In fact, the Complaint lacks any allegations that Ms. Catania spoke or expressed herself on any matters at all.  In their objections, Plaintiffs argue that by allegedly causing Ms. Catania's removal, Defendants infringed on "her right to speak freely on" the topics of "disciplining of underperforming teachers; the performance of MS 224 as a whole, and the performance of its students and teachers."  Plaintiffs' Objections at 12 (internal quotations omitted).  But the Complaint does not include any allegations that Ms. Catania engaged in speech or expression on these matters—only that she was responsible for them as principal.[11]  Because Plaintiffs failed to adequately plead that Ms. Catania engaged in protected speech or expression, the Court need not analyze her First Amendment retaliation claim further.

### ii.      Conspiracy

The R&R concluded that Plaintiffs failed to adequately plead a conspiracy between Defendants and a state actor.  Plaintiffs' objection to this portion of the R&R is sustained, because the R&R analyzed only whether Defendants acted in "conspiratorial concert with the New York City Department of Education."  R&R at 7.  As Plaintiffs explained in their objections, their theory of conspiracy does not involve a conspiracy between Defendants and the DOE, but rather between Defendants and the MS 224 Teachers, with whom Defendants allegedly organized meetings, protests, and press conferences.

---

[10] The only actions that the Complaint alleges that Ms. Catania took with respect to these matters were "measures . . . to improve the performance of the school."  Complaint ¶ 338.  This vague allegation is insufficient to plead that Ms. Catania engaged in expressive conduct protected by the First Amendment.  Such conduct requires "[a]n intent to convey a particularized message was present, and [that the] likelihood was great that the message would be understood by those who viewed it."  *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

[11] Even if Plaintiffs had alleged that Ms. Catania spoke on the topics of "disciplining of underperforming teachers; the performance of MS 224 as a whole, and the performance of its students and teachers," such allegations would be insufficient to adequately plead speech protected by the First Amendment if she spoke "pursuant to" or "in furtherance of" her job duties.  *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 202 (2d Cir. 2010).

In reaching this conclusion, Judge Willis followed Defendants' arguments in their motion to dismiss.  Like Judge Willis, Defendants did not examine whether the allegations in the Complaint—that Defendants and the MS 224 Teachers organized meetings, protests, and press conferences together[12]—adequately pleaded a conspiracy between Defendants and the MS 224 Teachers.[13] Nevertheless, as discussed, the Court grants Defendants' motion to dismiss Plaintiffs' § 1983 claims on other grounds.

### iii.      State Action

The R&R concludes that the MS 224 Teachers did not act under color of state law because none of the conduct alleged "is conduct within the duties of a teacher."  R&R at 8–9.  Plaintiffs' objection to this portion of the R&R is sustained, because the R&R mischaracterizes the legal standard for determining whether an action was taken under color of state law.

To adequately plead that a person acted under color of state law, a plaintiff must allege that the person "exercised power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law."  *West*, 487 U.S. at 49 (quotations omitted).  "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *Id.* at 50.

---

[12]  Defendants only mention these allegations to argue that "Plaintiffs lack any personal, first-hand knowledge to support the fictitious and unsupported assertions that the UFT organized rallies, invited the media or National Action Network, incited the rallies to become violent, or instructed teachers, students, or others to malign Plaintiff Catania."  Motion to Dismiss at 16.  Even assuming this factual assertion about Plaintiffs' personal knowledge is true, "[o]n a motion to dismiss, where the allegations must be accepted as true and all reasonable inferences must be drawn in the claimant's favor, the fact that the pleadings may rely on hearsay does not warrant dismissal."  *Connolly v. Wood-Smith*, No. 11 CIV. 8801 DAB JCF, 2012 WL 7809099, at *6 (S.D.N.Y. May 14, 2012) (citing *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)), *report and recommendation adopted as modified*, No. 11 CIV. 8801 DAB JCF, 2013 WL 1285168 (S.D.N.Y. Mar. 28, 2013); *see also Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 378 (S.D.N.Y. 2006) ("It is impossible and inappropriate to determine at this point in the litigation how [the plaintiff] might go about proving the truth" of the allegations in the complaint (internal citation omitted)).

[13] Defendants also argue that the UFT and its employees did not have "the authority to direct or control" the DOE or the MS 224 Teachers.  Defs' Supp. Br at 3.  But as described above, alleging that a private actor directed or controlled a state actor is only one of several ways in which a plaintiff may state a § 1983 claim against a private actor and is not required to adequately plead a § 1983 conspiracy.  *See Fabrikant*, 691 F.3d at 207 and *Ciambriello*, 292 F.3d at 324–25.

Identifying actions taken sunder color of state law requires more "than a simple determination as to whether [a public employee] was on or off duty when the challenged incident occurred." *Pitchell v. Callan*, 13 F.3d 545, 547–548 (2d Cir. 1994). "[A]cts of [public employees] in the ambit of their personal pursuits are plainly excluded" regardless of duty status. *Id.* at 548 (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). By contrast, actions that invoke the "real or apparent power" of the state may constitute state action, even if not performed while on duty. *Id.* "In short, courts look to the nature of the [employee]'s act" and not simply whether he was at work. *Id.*

Educators who are public employees act under color of state law when they "misuse [their] authority" over their students. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) (finding that a state university professor acted under color of state law when he harassed his student because "[a] professor at a state university is vested with a great deal of authority over his students with respect to grades and academic advancement by virtue of that position"); *see also Romero v. City of New York*, 839 F. Supp. 2d 588, 625 (E.D.N.Y. 2012) (denying summary judgment where a teacher "used his authority as a teacher to initiate and escalate his relationship with [the student plaintiff]" even though much of the abuse took place after school hours and off school grounds); *but see Wolff v. State Univ. of N.Y. Coll. at Cortland*, No. 113CV1397BKSCFH, 2016 WL 9022503, at *14 (N.D.N.Y. Feb. 5, 2016) (holding that when a teacher did not have any "authority or control over" a plaintiff who was not the teacher's student, the teacher "did not abuse their position" and was therefore not a state actor), *aff'd sub nom. Wolff v. State Univ. of N.Y.*, 678 F. App'x 4 (2d Cir. 2017) (summary order).

Defendants conclusorily assert that neither Defendants nor the MS 224 Teachers are state actors but fail to present substantive arguments about whether the teachers' alleged actions were

taken under color of state law.[14]  Defendants assert only that the MS 224 teachers' "activities of defending themselves in a lawsuit initiated by Plaintiffs, or pursuing affirmative litigation are not the type of acts performed within their discretionary duties as public school teachers."  Reply at 6.  This argument both applies an incorrect standard for identifying state action and disregards the majority of the relevant allegations in the Complaint—including several allegations that the MS 224 Teachers influenced their students to act in ways meant to damage Ms. Catania's reputation.[15]

Defendants also argue that neither the UFT nor the MS 224 Teachers had the authority to demote or terminate Ms. Catania.  But Plaintiffs' claim does not rest on the contention that either the UFT or the MS 224 Teachers had the authority to demote or terminate Ms. Catania.  Instead, Plaintiffs allege that Ms. Catania involuntarily resigned from her position, both because she believed she would be terminated due to controversy and negative publicity and because she wished to escape the alleged harassment by Defendants and the MS 224 Teachers.  Nevertheless, as described, the Court grants Defendants' motion to dismiss Plaintiffs' § 1983 claims on other grounds.

### B.  Section 1985 Claims

The R&R recommends dismissal of Ms. Catania's claims under § 1985 because it concludes that Plaintiffs did not adequately plead state action or a conspiracy and because "no comparator is provided by which Plaintiff Catania can be shown to have been treated differently than someone

---

[14] Defendants also claim that "[t]he lack of a cause of action against a state actor – in this case the decision maker – requires that the allegations be dismissed as against the UFT Defendants."  Defs' Supp. Br at 5.  First, Plaintiffs do not allege that the "decision maker," or the DOE, was the relevant state actor for their claims.  Second, this is an incorrect statement of law, and Defendants offer no authority to support it.  Instead, Defendants cite a case in which the court dismissed claims against alleged private actor conspirators after finding that the alleged state actor conspirator had not committed any constitutional violation.  *See Maloney v. Cnty. of Nassau*, No. 03-CV-4178 SLT MLO, 2010 WL 3940456, at *9 (E.D.N.Y. Sept. 30, 2010) ("Where, as here, however, all substantive § 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed. . . .  Such a dismissal is warranted because a § 1983 conspiracy action against private individuals will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.") (quotations and citations omitted) *aff'd*, 500 F. App'x 30 (2d Cir. 2012) (summary order).  This case offers no support for the proposition that claims against alleged private actor conspirators must be dismissed just because the complaint does not name the alleged state actor conspirators.

[15] For instance, Plaintiffs allege that Ms. Liriano "caused forty (40) students at the school to opt out of a certain exam" in order to reflect badly on Ms. Catania.  Complaint ¶ 270.

else in the same position of her of a different race." R&R at 14.   Plaintiffs' objections to this
portion of the R&R are sustained in part and overruled in part.

To state a claim under § 1985, a plaintiff must allege  "(1) a conspiracy; (2) for the purpose
of depriving, either directly or indirectly, any person or class of persons of the equal protection of
the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the
conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right
or privilege of a citizen of the United States."  *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*,
463 U.S. 825, 828–829 (1983).

Section 1985 "provides no substantial rights itself. . . .  The rights, privileges, and immunities
that § 1985 vindicates must be found elsewhere."  *Id.* at 831.  Here, Plaintiff raises claims under
§ 1985 for violations of her rights under the Fourteenth and First Amendments.  "The Fourteenth
Amendment protects the individual against *state action*, not against wrongs done by individuals."  *Id.*
at 832 (citations omitted) (emphasis in original).  Likewise, "a conspiracy to violate First
Amendment rights is not made out without proof of state involvement."  *Id.*

Because Plaintiffs failed to adequately plead that Ms. Catania was deprived of any of her
rights under the First Amendment or the Fourteenth Amendment, the Court agrees with the R&R's
conclusion that these claims under § 1985 must be dismissed.[16]  However, Plaintiffs' objections to
the R&R's conclusions that Plaintiffs failed to adequately plead the existence of a conspiracy or state
action are sustained.

First, as described above, the R&R incorrectly analyzed Plaintiffs' allegations regarding both
conspiracy and state action.  Second, the R&R can be read to conclude, erroneously, that a plaintiff
must offer a comparator in order to adequately plead that the alleged conspiracy was motivated by

---

[16] The R&R did not analyze, and Defendants did not argue, whether Plaintiffs adequately pleaded a violation of Ms.
Catania's equal protection rights under the Fourteenth Amendment.  Because Defendants did not move to dismiss this
claim, the Court does not analyze it in detail.

the "purpose of depriving, either directly or indirectly, any person . . . the equal protection of the laws, or of equal privileges and immunities under the laws." *Id.* at 829.[17]  Instead, Plaintiff need only plead that the conspiracy was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  A plaintiff may plead a defendant's discriminatory animus in a variety of ways, including by alleging that the defendants used slurs or expressed biased sentiments. *See Masri v. Thorsen*, No. 17-CV-4094 (KMK), 2020 WL 1489799, at *8 (S.D.N.Y. Mar. 27, 2020) (collecting cases).  One need not plead discriminatory animus indirectly through the existence of a comparator when there are direct allegations of discriminatory animus.  Therefore, Plaintiffs' objections to these conclusions are sustained.

### C.  Punitive Damages

Defendants' motion to dismiss Plaintiffs' request for punitive damages is denied.  "Courts routinely deny motions to dismiss requests for punitive damages as procedurally improper because such a request is not a cause of action subject to dismissal." C*ity Nat'l Specialty Co. v. Ashley Furniture Indus., LLC*, No. 21CV05521EKLGD, 2022 WL 2918121, at *3 (E.D.N.Y. July 21, 2022) (citing *Denis v. Home Depot, U.S.A., Inc.*, No. 10-CV-3227 ADS SIL, 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014) (collecting cases).  "Indeed, a motion to dismiss a punitive damages claim presents a procedural deficiency that obviates the need for the Court to conduct a Rule 12(b)(6) dismissal analysis of the facts pled in support of the claim." *City Nat'l Specialty Co. v. Ashley Furniture Indus., LLC*, No. 21CV05521EKLGD, 2022 WL 2918121, at *3 (E.D.N.Y. July 21, 2022) (collecting cases).  Therefore, Defendants' motion to dismiss Plaintiffs' punitive damages request is denied.

### V.    LEAVE TO AMEND

Judge Willis did not make a recommendation regarding whether Plaintiffs should be granted

---

[17] Defendants did not raise this argument in their papers.

leave to amend the Complaint, but the Court holds that they should be granted leave to amend.  "It is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  It is true that leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

But the Court cannot conclude that amendment of the Complaint to replead Plaintiff Catania's §§ 1983 and 1985 claims would be futile.  Plaintiff Catania has not yet had the opportunity to amend the Complaint with the benefit of a ruling from the Court on these issues.  "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  Plaintiff Catania is therefore granted leave to file an amended complaint with respect to her claims under §§ 1983 and 1985.  However, because the Court concludes that any amendment of Plaintiffs' derivative claims under §§ 1983 and 1985 would be futile, the Court does not grant Plaintiffs leave to amend with respect to those claims.  Any amended complaint must be filed and served no later than fourteen days from the date of this order.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.  Ms. Catania's §§ 1983 and 1985 claims for violation of her due process rights under the Fourteenth Amendment and her rights under the First Amendment rights are dismissed.

Mr. Murphy's derivative claims are also dismissed.  Defendants' motion to dismiss Plaintiffs' request for attorneys' fees and punitive damages is denied.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 105.

SO ORDERED.

Dated:  February 8, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge