USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/15/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                    :
PATRICIA CATANIA,                         :
                                                    :
                               Plaintiff,     :              1:21-cv-1257-GHW
                                                    :
                        -v-                     :        MEMORANDUM OPINION &
                                                    :                  ORDER
UNITED FEDERATION OF TEACHERS, *et al.*,   :
                                                    :
                                              Defendants.  :
                                                    :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

On February 27, 2025, the Court issued a memorandum opinion and order dismissing the Second Amended Complaint for failure to state a claim. Dkt. No. 129 (the "Opinion"). On March 13, 2025, Plaintiff filed a motion for reconsideration of the Opinion. Dkt. No. 132-1 (the "Motion"). Defendants filed their opposition to Plaintiff's motion for reconsideration on March 27, 2025. Dkt. No. 134 (the "Opposition"). Plaintiff filed a reply on April 3, 2025. Dkt. No. 135 (the "Reply"). Because Plaintiff provides no facts or controlling law that the Court overlooked, Plaintiff's Motion is denied.

## II.    LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Rule 6.3. "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to

correct a clear error or prevent manifest injustice." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks omitted).

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it). "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258–59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound discretion of the district court.'" *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### III. DISCUSSION

The Court assumes the parties' familiarity with the facts and procedural history of this case. *See* Opinion at 2–9.[1] Plaintiff requests that the Court reconsider its determinations (1) that Plaintiff failed to adequately plead that she had a property interest in continued employment as principal at MS 224, (2) that an Article 78 hearing was adequate post-deprivation procedure, and (3) that

---

[1] Unless otherwise indicated, the Court uses the defined terms from the Opinion.

2

Plaintiff failed to adequately plead that Defendants acted with discriminatory intent. For the reasons set forth below, the Court declines to reconsider these determinations.

### A. Property Interest in Employment

Plaintiff has provided no sound reason for the Court to reconsider its determination that Plaintiff has not adequately pleaded a property interest in continued employment. *See* Opinion at 15–20. Specifically, Plaintiff contends that the Court overlooked New York state law, which says that the right to terminate a probationary employee is not unlimited; there are certain constraints. *See Frasier v. Bd. of Educ. of City Sch. Dist. of City of New York*, 71 N.Y.2d 763, 765 (1988) ("Unquestionably, a Board of Education, under Education Law § 2573(1)(a), has the right to terminate the employment of a probationary teacher at any time and for any reason, unless the teacher establishes that the termination was for a constitutionally impermissible purpose, violative of a statute, or done in bad faith."). However, "these constitutional constraints on the Board's discretion do not create a property interest for plaintiff in her probationary position as . . . principal." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629–30 (2d Cir. 1996).[2]

As the Court outlined in the Opinion at 16, case law in this Circuit has consistently held that probationary employees do not have a constitutionally protected property interest in continued employment. *See Donato*, 96 F.3d at 629 ("New York law provided no basis for Donato to believe that she had a legitimate claim of entitlement to continued employment as an assistant principal. Rather, the law expressly permitted her termination at any time during her probationary period."); *Cummings v. City of New York*, No. 21-1380, 2022 WL 2166585, at *2 (2d Cir. June 16, 2022) (summary opinion) (holding that a teacher "did not have a property interest in her probationary employment"); *Walsh v. Suffolk Cnty. Police Dept.*, No. 06-cv-2237 (JFB) (ETB), 2008 WL 1991118, at

---

[2] That Plaintiff cites this very quotation in her reply brief and still argues that *Donato* supports her view that she has a property interest in her employment is borderline frivolous. *See* Reply at 2.

\*7 (E.D.N.Y. May 5, 2008), *aff'd*, 341 F. App'x 674 (2d Cir. 2009) ("It is well settled in New York that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason.").

The New York state cases cited by Plaintiff simply hold that a school district can violate *state* law by firing a probationary employee either for a constitutionally impermissible purpose or in bad faith, and the proper recourse is an Article 78 hearing. *See Lake v. Town of Southold*, 140 N.Y.S.3d 95 (N.Y. App. Div. 2d Dept. 2020); *Kolmel v. City of New York*, 930 N.Y.S.2d 573 (N.Y. App. Div. 1st Dept. 2011). But this state law restriction on improper firings does not create a property interest sufficient for constitutional due process protections to apply, *Donato*, 96 F.3d at 629, because, again, "[a] probationary employee may be discharged for . . . no reason at all," *Kolmel*, 930 N.Y.S.2d 573. And, while Plaintiff is correct that "a discharge motivated by an unconstitutional reason, such as racial animus or religious bigotry, would be impermissible whatever the terms of her employment," such a discharge would potentially implicate the Equal Protection or Free Exercise Clauses. *Donato*, 96 F.3d at 629. That does not mean, as *Donato* explicitly holds, that Plaintiff has a "property interest" that implicates the Due Process Clause. *Id.*[3] Because Plaintiff has offered no controlling law in support of the contention that a probationary employee in Plaintiff's position has a constitutionally protected property interest in her employment, the Court will not reconsider this issue.

### B. Post-Deprivation Procedure for Plaintiff's Stigma-Plus Claim

With respect to her stigma-plus due process claim, Plaintiff is once again raising the argument that an Article 78 hearing would not provide the proper remedy because she did not want

---

[3] Plaintiff argues that it is "incongruous" for the Court to hold that Plaintiff "simultaneously has protection but does not have protection." Reply at 2. It is not. Plaintiff may invoke the Equal Protection Clause pursuant to section 1983 if she adequately pleads that she was fired with discriminatory intent or racial animus. *See* Opinion at 25–27. She may invoke the Due Process Clause only if she adequately pleads "the existence of a property or liberty interest that was deprived." *Bryant v. New York State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012).

4

reinstatement or the removal of items from her employment file. The Court addressed this issue in full in the Opinion at 23–25.[4] Plaintiff is offering no *controlling* law—merely a dissenting opinion in a case cited by the Court—in support of her view that an Article 78 hearing was inadequate. "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue." *Padilla*, 636 F. Supp. 2d at 258–59. The Court therefore will not reconsider whether Plaintiff was afforded due process with the availability of an Article 78 hearing.

### C. Discriminatory Intent

Plaintiff offers no overlooked facts or controlling law that warrant reconsideration of the Court's decision that Plaintiff failed to allege Defendants' discriminatory intent. *See* Opinion at 25–28. The Court did not, as Plaintiff suggests, "overlook" statements "by numerous other actors." Motion at 3. To the contrary, the Court outlined all the statements alleged in the SAC in the Opinion's extensive background section. *See* Opinion at 2–9. After reviewing the statements, the Court concluded that only Ms. Liriano's 2016 statement ("Don't worry; I'll get a black Principal in here," SAC ¶ 143) both expressed race-based discriminatory motive and was attributable to an alleged co-conspirator. Opinion at 26–27.

Plaintiff does not offer any "statements made to the news media" that expressed a bias against Plaintiff on account of her race. Motion at 3. Plaintiff seems to misunderstand that the standard here is not whether Plaintiff has alleged "damaging 'photo opp[s]'" or statements that caused Plaintiff "significant harm." Motion at 3. The standard is whether the Plaintiff has pleaded

---

[4] To reiterate, due process must provide a meaningful post-deprivation remedy. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). The deprivation here is a loss of employment and a loss of reputation preventing future employment. *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006). An Article 78 hearing could have either led to Plaintiff's reinstatement or cleared her of the accusations levied against her. *Id*. This would have eliminated the *constitutional* injury. There is no constitutional requirement that all those who have a misapprehension about Plaintiff be corrected. *Contra* Motion at 5 ("The only way Plaintiff's name could ever be 'cleared' in this particular scenario would be if the entire internet, world-wide, was scrubbed of any and all references to the racial allegations against Plaintiff, which is a physical impossibility."). Plaintiff may be confusing damages in a defamation case for a section 1983 injury.

5

facts that support an inference that Defendants' conduct was undertaken on account of Plaintiff's race.  *See Burgis v. New York City Dept. of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015).

Plaintiff has also failed to offer any controlling law to suggest that the racial animus expressed by certain protestors can be imputed to Defendants simply because Mr. Woodruff "organized and conducted the protest rallies." Motion at 3–4.  And the Court did not "overlook[] the defendants' direct involvement in those rallies." *Id.*  To the contrary, Section II.G of the Opinion cites all the same paragraphs of the SAC that Plaintiff cites in the Motion.  *See* Opinion at 6–7.[5]  While Plaintiff would like the Court to infer from these facts that "Woodruff caused the protestors to yell racial slurs . . . and chase [Plaintiff] down the street," Motion at 4, there is no allegation that Mr. Woodruff—simply by organizing the protest—either forced, requested, or encouraged the protestors to take such action.  Plaintiff offers no controlling law that supports the view that the intervening conduct of the protestors should be imputed to Mr. Woodruff individually.  Therefore, the Court sees no reason to reconsider its decision.

Finally, the Court has not overlooked that Ms. Hinds was allegedly acting "at the behest of Woodruff" or that Ms. Liriano "considered Woodruff to be her 'boss.'" Motion at 4.  In any event,

---

[5] Specifically, the Opinion at pages 6 and 7 reads:
> In the week after the press conference, Mr. Woodruff organized two protests outside of the school. [SAC] ¶ 101.  The protests featured "public speeches to the crowd and public comments to the media, which speeches and comments all cast Catania in a false and negative light, including the false and negative light of being a racist." *Id.*  Other "participants in and organizers of" the protests included Ms. Liriano and Ms. Scott, other teachers from the school, students, parents, community members, and local news reporters. *Id.* ¶¶ 102, 104.
> 
> Mr. Woodruff contacted members of the media to cover the protests. *Id.* ¶ 106.  The subsequent media coverage "amplified and parroted the false narrative that Catania was a racist." *Id.* ¶¶ 107–08, 111.  At one protest, Defendants and Ms. Liriano organized a photograph featuring Ms. Liriano and four MS 224 students. *Id.* ¶ 158.  In the photograph, the students held signs bearing slogans associated with the Black Lives Matter movement and expressing the importance of teaching Black history. *Id.* ¶¶ 158–61.  The photo appeared in the front-page article in the New York Daily News about Ms. Catania. *Id.* ¶ 158.
> 
> Protesters shouted death threats and insults at Ms. Catania, including "white racist b**ch" and "white devil." *Id.* ¶ 112.  Ms. Catania "needed to be escorted to and from work for at least four (4) weeks" following the first protest. *Id.* ¶ 114.  During the second organized protest, a news reporter "urged the protesters and students to physically and dangerously pursue Catania in a threatening manner for the benefit of the news cameras." *Id.* ¶ 110.  Police officers and DOE security officers restrained the protestors and closed the street so that Ms. Catania could safely reach her car. *Id.* ¶¶ 110, 113.

6

these facts do not affect the Court's analysis.[6] The SAC does not contain a single non-conclusory allegation that Mr. Woodruff held any racially discriminatory motive that was carried out by Ms. Liriano or Ms. Hinds, acting at his behest. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) ("§ 1983 does not permit [] vicarious liability."). Again, Plaintiff fails to establish an inference that Defendants acted with racially discriminatory intent.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 132.

SO ORDERED.

Dated: April 15, 2025
New York, New York

GREGORY H. WOODS
United States District Judge

---

[6] Plaintiff provides no explanation of how these facts should affect the Court's analysis.