USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/22/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
PATRICIA CATANIA,                                                   :
                                                                    :
                                        Plaintiff,                  :    1:21-cv-1257-GHW
                                                                    :
                    -v-                                             :    MEMORANDUM OPINION &
                                                                    :    ORDER
UNITED FEDERATION OF TEACHERS, *et al.*,                            :
                                                                    :
                                        Defendants.                 :
                                                                    :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Plaintiff commenced this action on February 11, 2021. Dkt. No. 1. On February 27, 2025, the Court issued an opinion dismissing Plaintiff's third complaint. Dkt. No. 129 (the "MTD Opinion"). In opposing the motion to dismiss, Plaintiff requested that, in the event the Court dismissed Plaintiff's claims, Plaintiff be granted leave to further amend her complaint. Dkt. No. 127 at 15–16. Upon dismissing Plaintiff's third complaint, the Court deferred a decision on whether to grant Plaintiff leave to file a fourth complaint and scheduled a conference to discuss Plaintiff's proposed amendments. *See* MTD Opinion at 29. On April 15, 2025, the Court issued an opinion denying Plaintiff's motion to reconsider the February 27, 2025 opinion. Dkt. No. 136 (the "Reconsideration Opinion"). That same day, the Court held a conference to discuss Plaintiff's proposed amendments. In advance of the April 15, 2025 conference, Plaintiff filed a letter setting out her proposed amendments to the complaint. Dkt. No. 137 ("Plaintiff's First Letter"). After the conference, Plaintiff filed a second letter supplementing her request for leave to amend. Dkt. No. 138 ("Plaintiff's Second Letter").

      The Court assumes the parties' familiarity with the facts and procedural history of the case. The Court grants Plaintiff leave to amend her complaint for the limited purpose of curing the deficiencies identified with respect to her Equal Protection claim.

I. DISCUSSION

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017). "Repeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). "In general, when assessing whether an amended complaint would state a claim, we consider the proposed amendments along with the remainder of the complaint." *Pyskaty*, 856 F.3d at 225. "Although courts commonly look to proposed amendments to determine futility, . . . courts may consider all possible amendments when determining futility." *Panther Partners Inc. v. Ikanos Commun., Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (unpublished).

Plaintiff's claims, as alleged in the second amended complaint, were found deficient for the following reasons: 1) Plaintiff failed to plead that she was retaliated against for participating in protected speech under the First Amendment; 2) Plaintiff failed to plead that she had a property interest under the Due Process Clause in her position as probationary principal at MS 224; 3) Plaintiff failed to plead that she was denied adequate post-deprivation procedures for her stigma-plus claim; and 4) Plaintiff failed to allege that Defendants acted with discriminatory intent. Plaintiff's proposed amendments would not cure the deficiencies identified in the MTD Opinion, except with respect to the issue of discriminatory intent.

A. Protected Speech

On the first issue of protected speech, Plaintiff has yet failed to allege that she was retaliated

against for engaging in protected speech; the only speech that she alleges to have engaged in is speech pursuant to her duties as principal. *See* MTD Opinion at 13–14. Plaintiff was given notice in the Court's order dismissing her first amended complaint that such speech cannot form the basis of a First Amendment retaliation claim. Dkt. No. 117 at 19 & n.11. "Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 308 (S.D.N.Y. 2022), *aff'd*, No. 22-2505-cv, 2023 WL 8708417 (2d Cir. Dec. 18, 2023). And "Plaintiff has not otherwise suggested that [she] is in possession of facts that would cure the deficiencies" because she has not identified any protected speech for which she believes she has suffered retaliation. *Id.* Therefore, the Court finds further amendment of her First Amendment claim to be futile.

### B. Property Interest in Employment

On the second issue of a property interest in her employment, Plaintiff cannot state a claim through further amendment. In briefing both the motion to dismiss and the motion for reconsideration, Plaintiff has provided no law in support of the proposition that a probationary principal in her position has a constitutionally protected property interest in her employment. She did not rebut Defendants' argument that her collective bargaining agreement did not provide contractual protection. *See* MTD Opinion at 18 & 19 n.8. And she, in her motion for reconsideration, did not address the Court's finding that the C-30 appointment process provides no termination protections. *See* MTD Opinion at 19. Given that Plaintiff has pleaded that she was serving in a probationary status at the time of the alleged events, and given the clear Second Circuit precedent that probationary principals in her position do not have a constitutionally protected property interest in that job, *see* Reconsideration Opinion at 3–4, the Court understands there to be

no additional facts that she can plead that would state a Due Process claim.[1]

Plaintiff's Second Letter does not affect this conclusion. *See* Dkt. No. 138. The Court first notes that the question of whether a party should be granted leave to amend turns on whether the party has additional *factual* allegations to plead. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). Plaintiff's letter only re-raises an issue this Court addressed in the MTD Opinion, namely whether the Regulation C-30 appointment process provides for-cause termination protections. *See* MTD Opinion at 19. This is a legal question,[2] and Plaintiff's counsel had an opportunity to research and brief this issue fully when the Court was deciding the motion to dismiss and when the Court was deciding the motion for reconsideration. Plaintiff, however, chose not to. Plaintiff's ability to make further legal arguments has passed.

Nonetheless, the Court will briefly address why the legal arguments and the new case law raised in Plaintiff's Second Letter do not refute the case law considered by the Court in both the motion to dismiss and the motion for reconsideration, both fully briefed by Plaintiff. The question before the Court was whether a principal appointed through the Regulation C-30 process has termination protections sufficient to implicate the Due Process Clause. Given that Plaintiff pleaded that she was a probationary employee, *see* Dkt. No. 118 ¶¶ 305, 309, 321–22, the Court looked to the text of Regulation C-30 to determine whether it provides termination protection to probationary

---

[1] At the April 15, 2025 conference and in Plaintiff's First Letter, Plaintiff argued that the fact that Superintendent Alvarez submitted a "detailed letter" giving reasons for her termination means that she might have had employment protections. *See* Dkt. No. 137 at 2. This argument is unconvincing. It is irrelevant what Superintendent Alvarez believed about Plaintiff's status as a probationary employee; that he did give her reasons for her termination does not mean that he was required to do so. What matters is whether "contractual or statutory provisions guarantee continued employment." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002). Plaintiff has now engaged in multiple rounds of briefing on this issue and has failed to successfully point to such a contractual or statutory provision in Plaintiff's case.

[2] Plaintiff put in a footnote in Plaintiff's Second Letter, "To the extent the within parties disagree on the meaning or application of the relevant rules/regulations, such a critical dispute should be resolved via discovery and depositions." Dkt. No. 138 at 3 n.5. This is incorrect. "When a decision turns on the meaning of words in a statute or regulation, the decision is one of law which must be made by the court." *Stissi v. Interstate and Ocean Transport Co. of Philadelphia*, 765 F.2d 370, 374 (2d Cir. 1985).

employees appointed through the C-30 process. Not only does the regulation not explicitly provide for-cause termination protection for any principals appointed through the process, let alone probationary principals, the regulation does not even mention termination at all. *See* Regulation C-30 of the Chancellor of the New York City Department of Education, issued May 21, 2015, ("Regulation C-30"). This coheres with case law in this district, which has held that a probationary principal, even one hired through the C-30 process, "does not have a legitimate claim of entitlement to her position." *Williams v. New York City Dept. of Educ.*, No. 19-cv-1353 (CM), 2019 WL 4393546, at *17 (S.D.N.Y. Aug. 28, 2019).

Plaintiff now cleverly cites cases that distinguish interim principal assignments from "permanent selections" made through the C-30 process. *Wolf v. New York City Dept. of Educ.*, 708 F. Supp. 2d 327, 331 (S.D.N.Y. 2010). But the term "permanent," as used—perhaps imprecisely—to distinguish between an "interim acting principal," *Wolf v. Bd. of Educ. of City of New York*, 162 F. Supp. 2d 192, 196 (S.D.N.Y. 2001), or a "temporary" principal, *Robins v. New York City Bd. of Educ.*, No. 07-cv-3599 (JGK) (KNF), 2010 WL 2507047, at *2 (S.D.N.Y. June 21, 2010), and a principal who is hired to serve longer term, does not necessarily mean that the principal has removal protections. In none of the cases cited by Plaintiff did the court find that the C-30 appointment was "permanent" as defined under the New York State Civil Service Law. Further, construing Regulation C-30 in this way—notwithstanding the clear text of the regulation—would also render the probationary period provided for in N.Y. Educ. Law § 2573(b) a nullity for all principals and assistant principals, given that Regulation C-30 "governs the selection, assignment, and appointment of Principals and Assistant Principals." Regulation C-30 at 1. This would lead to an "absurd result[]." *U.S. v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results."); *U.S. v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994) ("[C]ourts will avoid statutory interpretations that render provisions superfluous.").

### C. Post-Deprivation Procedure for the Stigma-Plus Claim

On the third issue of post-deprivation procedures for a stigma-plus claim, further amendment would not cure the deficiencies in the Second Amended Complaint. Plaintiff, in her opposition to the motion to dismiss and in her motion for reconsideration, only disputes the legal conclusion that an Article 78 hearing is a proper post-deprivation remedy for her stigma-plus claim. Plaintiff's First Letter continues to dispute this legal conclusion. *See* Dkt. No. 137 at 2–3. The Court ruled on this issue of law three times now, in the previous motion-to-dismiss opinion, in the MTD Opinion, and in the Reconsideration Opinion. Further, the facts that Plaintiff references in Plaintiff's First Letter regarding the Article 78 hearing were all alleged in the Second Amended Complaint, *see* Dkt. No. 118 ¶¶ 335–54, or were all otherwise asserted in her briefing. These facts and arguments were therefore considered by the Court in the MTD Opinion as well as the Reconsideration Opinion. The Court sees no reason to believe that Plaintiff has any additional facts that would alter the Court's determination. Therefore, Plaintiff is denied leave to amend her Due Process claim.

### D. Discriminatory Intent

On the fourth issue of discriminatory intent, the Court is giving Plaintiff one more opportunity to re-plead her Equal Protection claim. The MTD Opinion examined each alleged statement of discriminatory sentiment directed at Plaintiff and found that none could be used to impute discriminatory intent to the named defendants. MTD Opinion at 26–28. And in her reconsideration motion, Plaintiff provided no additional statements or facts that evidenced Defendants' discriminatory intent. *See* Reconsideration Opinion at 5–6. And while Plaintiff's counsel at the April 15, 2025 conference suggested that he would be able to allege facts that show that Woodruff, and perhaps other named defendants, participated in the alleged conspiracy with the intent of forcing Plaintiff's resignation on account of her race, Plaintiff's counsel could not proffer

those additional facts at the time of the conference.³  Plaintiff's counsel did, however, suggest that through further investigation of the alleged union meetings, he would be able to draw a connection between the discriminatory intent of certain teachers and the conduct of the named defendants. The Court is concerned that even though this case has proceeded for over four years with three complaints, simply alleging the necessary elements of Plaintiff's claim still requires further investigation.⁴  Nonetheless, based on Plaintiff's counsel's proffer, the Court cannot conclude that there are no "possible amendments" that would cure the deficiencies in Plaintiff's Equal Protection claim.  *Panther Partners*, 347 F. App'x at 622.

Therefore, the Court grants Plaintiff leave to amend her Equal Protection claim in order to allege *facts* that support the conclusion that the named defendants acted with discriminatory intent, on account of Plaintiff's race.  Plaintiff's counsel is reminded that the Court is bound by the Supreme Court's precedent regarding pleading standards.  Plaintiff must plead "factual allegation[s]," not conclusory statements, "sufficient to plausibly suggest [the defendants'] discriminatory state of mind."  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not 'show[n]'— 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II.  CONCLUSION

For these reasons, Plaintiff is granted leave to file a third amended complaint solely to cure the deficiencies identified with respect to her Equal Protection claim.  Plaintiff's third amended

---

³ The Court notes that in Plaintiff's First Letter, Plaintiff suggests she will "reorganize" the complaint to highlight the racially motivated statements.  Dkt. No. 137 at 3.  The Court was perfectly able to interpret the Second Amended Complaint as written and did not find there to be any allegations of racially motivated statements *by the named defendants*. The Court expects, if Plaintiff chooses to replead, that she will provide *additional* allegations that state a plausible claim that the named defendants acted with discriminatory intent on account of Plaintiff's race.  Simple reorganization will not do.

⁴ The Court does note, importantly, that in the previous motion-to-dismiss opinion, dated February 8, 2024, the Court "did not analyze, and Defendants did not argue, whether Plaintiff[] adequately pleaded a violation of Ms. Catania's equal protection rights under the Fourteenth Amendment."  Dkt. No. 117 at 23 n.16.  Therefore, Plaintiff has not had the benefit of an adverse ruling to shape her previous amendments with respect to the issue of discriminatory intent.

complaint is due no later than twenty-one (21) days from the date of this order. The effect of this order, in conjunction with the Court's February 27, 2025 order, is that Plaintiff's other claims—those that do not rely on a violation of the Equal Protection Clause—are dismissed with prejudice. Plaintiff should take this into account in framing any amended complaint.

    SO ORDERED.

Dated: April 22, 2025
New York, New York

                                        GREGORY H. WOODS
                                      United States District Judge